Filed 12/29/22

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br>KEVIN LIPSCOMB,<br><br>    Defendant and Appellant. | A164755<br><br>(San Francisco County<br>Super. Ct. Nos.<br>SCN204082 & CT2319247) |

In 2007, defendant Kevin Lipscomb pulled his car up next to Kenneth Lee in a crosswalk and shot him three times. After a jury found Lipscomb guilty of various crimes and found true certain firearm enhancements, he was sentenced to a prison term of 67 years to life. In 2019, Lipscomb petitioned for and was granted resentencing under *People v. Vargas* (2014) 59 Cal.4th 635, and in 2022, was resentenced to 35 years to life. As part of that resentencing, the trial court declined to dismiss a 25-year-to-life firearm enhancement in the interest of justice, finding that doing so would endanger public safety. Lipscomb primarily argues that under recently enacted legislation, the trial court was required to dismiss the firearm enhancement because its application could result in a sentence of over 20 years. He also argues that the $17,000 restitution fine imposed must be reduced to the statutory maximum of $10,000. We agree that the restitution fine must be reduced, and otherwise affirm.

1

## BACKGROUND

### The Shooting

In Lipscomb's direct appeal, we described the facts of the offense as follows:

"On June 4, 2007, at approximately 11:55 a.m., Kenneth Lee parked his car on Townsend Street in San Francisco, got out, and walked to a nearby crosswalk where he waited for the pedestrian crossing light to turn green. As he stood there, a silver Dodge Charger driven by [Lipscomb] pulled up into the crosswalk. [Lipscomb] made eye contact with Mr. Lee and kept looking over at him. Because Mr. Lee thought perhaps he knew the driver or that he was lost and wanted directions, he bent down to peer in through the open passenger side window and asked, 'Can I help you?' [Lipscomb], whom Mr. Lee did not recognize, looked at him with a smirk on his face and reached out as if he were going to hand him something. Instead, [Lipscomb] shot him two to three times. Mr. Lee, who suffered gunshot wounds to his left forearm and both groins, collapsed onto the sidewalk. [Lipscomb] drove away." (*People v. Lipscomb* (June 29, 2012, A128549) [nonpub. opn.], p. 2.)

Lipscomb "was soon spotted by a number of San Francisco police officers, who began a pursuit. [Lipscomb] led them on a high-speed chase through the city streets, eventually abandoning his car to flee on foot when he became stuck in traffic. He was apprehended in an abandoned building and arrested." (*People v. Lipscomb, supra*, A128549, p. 1.)

**The Charges, Trial, and Sentence**

In 2008, the San Francisco County District Attorney filed an amended information charging Lipscomb with attempted murder (Pen. Code, §§ 187, subd. (a), 664) (count 1)[1]; evading a police officer with willful and wanton disregard for the safety of persons and property (Veh. Code, § 2800.2, subd. (a)) (count 2); possession of a firearm by a felon (former § 12021, subd. (a)(1)) (count 3); discharging a firearm from a motor vehicle (former § 12034, subd. (c)) (count 4); and assault with a semiautomatic firearm (§ 245, subd. (b)) (count 5). With respect to counts 1 and 4, the information alleged that Lipscomb had personally discharged a firearm causing great bodily injury (§ 12022.53, subd. (d)), and with respect to count 5, the information alleged that Lipscomb had used a firearm (§ 12022.5, subd. (d)). The information also alleged that Lipscomb had suffered three prior serious felony convictions qualifying as strikes (§§ 667, subds. (a)(1), (d), (e), 1170.12, subds. (b), (c)) and had served two prior prison terms (§ 667.5, subd. (b)). (*People v. Lipscomb*, *supra*, A128549, p. 6.)

In January of 2009, a jury deadlocked on the attempted murder charge (count 1) but found Lipscomb guilty on the remaining counts and found the firearm allegations true. The trial court then found the prior conviction allegations true. The trial court sentenced Lipscomb to 67 years to life in prison. (*People v. Lipscomb*, *supra*, A128549, p. 7.) It also imposed a restitution fine of $27,800. (*Ibid.*)

We affirmed on direct appeal, but ordered that the restitution fine be reduced to the statutory maximum of $10,000. (*People v. Lipscomb*, *supra*, A128549, pp. 10–11.)

---

[1] Further undesignated statutory references are to the Penal Code.

**The Resentencing**

In 2019, Lipscomb petitioned for resentencing pursuant to *People v. Vargas*, *supra*, 59 Cal.4th 635, on the ground that two of his prior strike convictions were based on the same criminal act. On June 23, 2020, the trial court granted the petition.

On August 6, 2021, the trial court dismissed one of the prior strikes from the charging document.

On February 9, 2022, the trial court resentenced Lipscomb to a term of 35 years to life, as follows:

The trial court began by selecting count 4 as the principal term. The court found that imposing the lower term on count 4 under section 1170, subdivision (b)(6) would be "contrary to the interests of justice," and imposed the middle term of five years, doubled to ten years because of the prior strike.

The court then turned to the 25-year-to-life firearm enhancement with respect to count 4 (§ 12022.53, subd. (d)), and Lipscomb's arguments that the enhancement should be dismissed under section 1385 "in furtherance of justice," saying this:

"The Court declines to find that Penal Code Section 1385(c)(2)(B) mandates dismissal of the Penal Code Section 12022.53(d) enhancement because it will result in a sentence over 20 years. However, the Court must abide by Penal Code Section 1385(c)(2)'s requirement that the Court determine whether dismissal of the enhancement would result in physical injury or serious danger to others."

The trial court then noted that defendant's "primary focus" at resentencing had been on his mental health as a mitigating circumstance, and explained that it had, in preparation for sentencing, "meticulously" and "painstakingly" analyzed nearly 2,000 pages of Lipscomb's medical and

4

disciplinary records from his time in prison. In a lengthy analysis, the trial court concluded that the current offense was not "connected to mental illness" under section 1385, subdivision (c)(2)(D), noting that the medical records related only to Lipscomb's time in prison, whereas the offense was in 2007, that his medications "were largely for various physical ailments," that his disciplinary record showed "ordinary violations . . . as a result of aggressive and impulsive behavior" and not "bizarre or unusual behavior," and that the various mental health assessments in his record each contained a finding that "there was no evidence to suggest that the inmate, that is Mr. Lipscomb, was in acute distress from any mental health symptoms that would affect his thinking as reasoning or decision making at time of the incident."

However, even assuming that the offense was "connected to mental illness," the trial court went on to find that dismissal of the enhancement "would result in physical injury or serious danger to others." The court noted that the crime involved "great violence, great bodily harm, threat of great bodily harm, and other acts disclosing a high degree of cruelty, viciousness and callousness," that Lipscomb's prison records showed "fighting, not following direct orders, [a] history of aggression, [and] impulsive behaviors," that his "interest in changing has been non-existent," that he "consistently refused to attend" psychiatric appointments and mental health treatment, that "he could not give a good reason to inspectors for shooting the victim," and that his "remorse about his conduct was . . . perfunctory; his empathy, non-existent."

And the court continued: "Based upon my evaluation of the record, I find there has been substantial evidence to support the conclusion that he has not done anything to prove that he would be anything other than a danger to the community if he were released, and for that reason I find there

5

is a substantial likelihood that the dismissal of the enhancement would endanger public safety; i.e., result in physical injury or other serious danger to others as defined under Penal Code Section 1385(c)(2). The Court remains unpersuaded that the substantial degree of danger posed by defendant is any less than in 2007. The prisoner who has shown an inability to reform will continue to serve his life sentence. I therefore decline to dismiss the 12022.53(d) enhancement in the interest of justice under Penal Code Section 1385(c)(2)(D)."

Slightly later on, the trial court concluded: "I declined to dismiss the 12022.53(d) enhancement in the interest of justice under Penal Code Section 1358(c)(2) and the various mitigating circumstances raised under subparagraphs (A) through (I). I find, after giving great weight and consideration to those mitigating circumstances, that they are significantly outweighed by the substantial likelihood that dismissal of this enhancement would endanger public safety. Imposition of this enhancement is justified. His sentence is an additional 25-years-to-life."

The trial court then dismissed the two five-year enhancements with respect to count 4 under section 667, subdivision (a) in the interest of justice, finding that they were "unnecessary and unwarranted when considering defendant's sentence of 35-years-to-life."

The trial court sentenced Lipscomb to the midterm of two years on each of counts 2 and 3, doubled in each case to four years because of the prior strike, and ordered these terms to run concurrently to the sentence on count 4 because the crimes were "sufficiently close in time and place." The court struck the two five-year priors on each of counts 2 and 3 in the interest of justice. Finally, the court imposed the midterm of six years on count 5, doubled to 12 years because of the prior strike, as well as the midterm of four

6

years for the section 12022.5, subdivision (d) enhancement, and stayed the resulting 16-year sentence on count 5 under section 654.

The trial court also imposed restitution fines under section 1202.4, subdivision (b) on each count: $1,800 on count 2, $1,800 on count 3, $7,800 on count 4, and $5,600 on count 5, for a total of $17,000. The trial court imposed and suspended a parole revocation fine in the same amount.

Lipscomb filed a notice of appeal.

## DISCUSSION

### The Trial Court Was Not Required to Strike the Firearm Enhancement by Section 1385, Subdivision (c)(2)(C)

Lipscomb's primary argument is that the trial court erred in declining to strike the firearm enhancement on count 4 under section 1385, subdivision (c)(2)(C), which requires the court to consider as a mitigating circumstance that "[t]he application of an enhancement could result in a sentence of over 20 years" and that "[i]n this instance, the enhancement shall be dismissed."[2]

Before 2018, sections 12022.5 and 12022.53 prohibited a trial court from striking a firearm enhancement required to be imposed under those sections. (See *Tirado*, *supra*, 12 Cal.5th at p. 695.) The Legislature enacted Senate Bill No. 620 (2017-2018 Reg. Sess.) to amend sections 12022.5 and 12022.53, effective January 2018, to give a trial court discretion to strike those enhancements: Sections 12022.5, subdivision (c), and 12022.53, subdivision (h), now provide that a "court may, in the interest of justice

---

[2] Lipscomb's opening brief includes the additional argument that the trial court should have imposed a lesser-included uncharged firearm enhancement on count 4 under *People v. Tirado* (2022) 12 Cal.5th 688 (*Tirado*). The Attorney General responded that these lesser-included enhancements (§ 12022.53, subds. (b) & (c)) apply only to certain felonies, not including shooting from an occupied vehicle. On reply, Lipscomb has withdrawn this argument.

pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (See Stats. 2017, ch. 682, § 1; *Tirado, supra*, 12 Cal.5th at pp. 695–696.)

In 2021, the Legislature enacted Senate Bill No. 81 (2021-2022 Reg. Sess.), which amended section 1385 to specify mitigating circumstances that the trial court should consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (Stats. 2021, ch. 721, § 1.) And in particular, section 1385, subdivision (c)[3] now provides:

"(c)(1) Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute.

"(2) In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present. Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety. 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others.

"(A) Application of the enhancement would result in a discriminatory racial impact as described in paragraph (4) of subdivision (a) of Section 745.

---

[3] The version of section 1385 in effect at the time of Lipscomb's sentencing included a subdivision (c)(3) before listing the mitigating circumstances (A) through (I). Effective June 30, 2022, that subdivision (c)(3) has been moved, so that the mitigating circumstances now appear in subdivision (c)(2). (See *People v. Sek* (2022) 74 Cal.App.5th 657, 674, fn. 7 (*Sek*).)

"(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed.

"(C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed.

"(D) The current offense is connected to mental illness.

"(E) The current offense is connected to prior victimization or childhood trauma.

"(F) The current offense is not a violent felony as defined in subdivision (c) of Section 667.5.

"(G) The defendant was a juvenile when they committed the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case.

"(H) The enhancement is based on a prior conviction that is over five years old.

"(I) Though a firearm was used in the current offense, it was inoperable or unloaded."

**Applicable Law**

" 'As in any case involving statutory interpretation, our fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.' (*People v. Murphy* (2001) 25 Cal.4th 136, 142.) 'We begin by examining the statutory language, giving it a plain and commonsense meaning. [Citation.] We do not, however, consider the statutory language in isolation; rather, we look to the entire substance of the statutes in order to determine their scope and purposes. [Citation.] That is, we construe the words in question in context, keeping in mind the statutes' nature and obvious purposes. [Citation.] We must harmonize the various parts of the

9

enactments by considering them in the context of the statutory [framework] as a whole. [Citation.] If the statutory language is unambiguous, then its plain meaning controls. If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history.' (*People v. Cole* (2006) 38 Cal.4th 964, 975.)" (*Skidgel v. California Unemployment Ins. Appeals Board* (2021) 12 Cal.5th 1, 14.) "In such circumstances, we ' "select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences." [Citation.]' ([*People v. Coronado* (1995) 12 Cal.4th 145, 151]; see *Escobedo v. Estate of Snider* (1997) 14 Cal.4th 1214, 1223.)" (*Day v. City of Fontana* (2001) 25 Cal.4th 268, 272.)

**Analysis**

Lipscomb argues that the sentence "In this instance, the enhancement shall be dismissed" in section 1385, subdivision (c)(2)(C) is a mandatory command, and requires that the enhancement be dismissed whenever its application could result in a sentence longer than 20 years, notwithstanding the court's discretion and even if the court finds that dismissal of the enhancement would endanger public safety. We are not persuaded.

Section 1385, subdivision (c)(1) provides that "the court shall dismiss an enhancement if it is in the furtherance of justice to do so." "In exercising its *discretion* under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present," including, as here, the circumstance that "[t]he application of the enhancement could result in a sentence of over 20 years," "*unless the court finds that dismissal of*

10

*the enhancement would endanger public safety*." (§ 1385, subd. (c)(2), (c)(2)(C) (emphases added).) The trial court here repeatedly made an explicit finding that dismissing the enhancement "would endanger public safety"—a finding that Lipscomb does not challenge on appeal. Because of that finding, the court was not required to "consider and afford great weight" to evidence that application of the enhancement could produce a sentence of over 20 years, in its exercise of what the statute explicitly acknowledges to be the "discretion" that it affords.

As noted, Lipscomb's argument is based entirely on the sentence in section 1385, subdivision (c)(2)(C) that "In this instance, the enhancement shall be dismissed." But we cannot read this sentence in isolation. (*Skidgel v. California Unemployment Ins. Appeals Board*, *supra*, 12 Cal.5th at p. 14; see *Beecham v. United States* (1994) 511 U.S. 368, 372 ["The plain meaning that we seek to discern is the plain meaning of the whole statute, not of isolated sentences"].) Instead, we must consider the statute as a whole, in particular its characterization of the fact that the enhancement could produce a sentence over 20 years as a "mitigating circumstance" for the court to consider in the exercise of its "discretion" to strike the enhancement— consideration which, as noted, does not apply at all where the court finds that striking the enhancement would endanger public safety.

Nor does our interpretation make the language "[i]n this instance, the enhancement shall be dismissed" surplusage. Absent a finding that dismissing the enhancement would endanger public safety, the language could require the trial court to dismiss the enhancement where it finds that doing so would be "in the furtherance of justice" under subdivision (c)(1)—a question not presented by this case and on which we express no opinion.

11

To the extent that the statute is ambiguous, indicators of the Legislature's intent support our reading. Page 5 of the September 8, 2021 Senate Floor Analysis suggests that the trial court retains discretion to impose the enhancement where failing to do so would endanger public safety. This is what it says:

"Current law has a standard for dismissing sentence enhancements that lacks clarity and does not provide judges clear guidance on how to exercise this discretion. A ruling by the California Supreme Court noted that the law governing when judges should impose or dismiss enhancements remains an 'amorphous concept,' with discretion inconsistently exercised and underused because judges did not have adequate guidance.

"Building on the California Rules of Court that guide judges in certain sentencing decisions, SB 81 aims to provide clear guidance on how and when judges may dismiss sentencing enhancements and other allegations that would lengthen a defendant's sentence. By clarifying the parameters a judge must follow, SB 81 codifies a recommendation developed with the input of the judges who serve on the Committee on the Revision of the Penal Code for the purpose of improving fairness in sentencing *while retaining a judge's authority to apply an enhancement to protect public safety* (emphasis added)."

The versions of Senate Bill No. 81 confirm the Legislature's intent that the trial court retain the ability to impose an enhancement where failure to do so would endanger public safety. The February 8, 2021 version of Senate Bill No. 81 provided that "the court shall dismiss an enhancement upon finding any of the following circumstances to be true," and, after listing the mitigating circumstances in paragraph (1), further provided that "[t]he court may decline to dismiss a charged sentencing enhancement pursuant to paragraph (1) upon a showing by clear and convincing evidence that

12

dismissal of an enhancement would endanger public safety." As amended by the Senate on March 23, the bill provided that "[t]here shall be a presumption that it is in the furtherance of justice to dismiss an enhancement upon a finding that any of the mitigating circumstances in subparagraphs (A) to (I), inclusive, are true. This presumption shall only be overcome by a showing of clear and convincing evidence that dismissal of the enhancement would endanger public safety." This language remained unchanged through amendment by the Senate on April 8, April 27, and amendment by the Assembly on July 1. In the August 30 amended Assembly version—that would ultimately become law—the presumption language was replaced with the "shall consider and afford great weight" language in the final version of the statute.

Thus every version of the statute—including, as we conclude, the current one—expressly empowered the court to impose the enhancement upon a finding that dismissing it would endanger public safety.

This conclusion is confirmed by a September 10, 2021 letter from the bill's author, Senator Nancy Skinner, to the Secretary of the Senate for placement in the Senate Daily Journal, which provided as follows:

"As the author of Senate Bill [No.] (SB) 81, I wish to provide some clarity on my intent regarding two provisions of the bill.

"First, amendments taken on August 30, 2021 remove the presumption that a judge must rule to dismiss a sentence enhancement if certain circumstances are present, and instead replaces that presumption with a 'great weight' standard where these circumstances are present. *The retention of the word 'shall' in Penal Code § 1385(c)(3)(B) and (C) should not be read as*

13

*a retention of the previous presumption language—the judge's discretion is preserved in Penal Code § 1385(c)(2).*[4]

"Second, I wish to clarify that in establishing the 'great weight' standard in SB 81 for imposition or dismissal of enhancements [Penal Code § 1385(c)(2)] it was my intent that this great weight standard be consistent with the case law in California Supreme Court in *People v. Martin* [(1986)] 42 Cal.3d 437 . . . . [¶] Thank you for this opportunity to clarify the intent of SB 81 (emphasis added)." (Sen. Daily J. (2021–2022 Reg. Sess.) at pp. 2638-2639.) In short, the bill's author expressly indicated the intent that the judge's discretion to decide whether to impose the enhancement be preserved notwithstanding the "shall be dismissed" language in section 1385, subdivision (c)(2)(C).

In arguing that the legislative history supports his reading, Lipscomb asserts that because the "In this instance, the enhancement shall be dismissed" language in section 1385, subdivision (c)(2)(C) was added to the February 8, 2021 version of Senate Bill No. 81, and remained unchanged through each subsequent version without being "changed or questioned," "the Legislature intended dismissal of enhancements resulting in sentences in excess of 20 years" under all circumstances. But this argument simply assumes what it tries to prove. And as noted, in each and every version of the bill the "shall be dismissed" language was accompanied by language providing that the trial court could impose the enhancement upon a finding that not doing so would endanger public safety.

In addition, as the Attorney General argues, Lipscomb's interpretation of the statute would produce absurd consequences. The firearm enhancement

---

4 The language of subdivisions (c)(3)(B) and (C) now appear in (c)(2)(B) and (C).

14

at issue here, section 12022.53, subdivision (d), provides for a term of 25-year-to-life term where the intentional discharge of the firearm causes great bodily injury or death. Under Lipscomb's interpretation, because such an enhancement necessarily "could result in a sentence over 20 years" in *every* case in which it is charged, this enhancement could never be imposed under any circumstances, including where, as here, the trial court made an express finding that failing to do so would endanger public safety. We cannot adopt an interpretation of the statute that would lead to such absurd consequences.

Lipscomb's reliance on *Sek*, *supra*, 74 Cal.App.5th 657 is unavailing. There, the defendant was convicted of various crimes, including firing at an occupied motor vehicle for the benefit of a criminal street gang, and had certain gang enhancements applied to his sentence. (*Id*. at p. 664.) While his appeal was pending, the Legislature enacted Assembly Bill No. 333, which amended section 186.22 to impose new substantive and procedural requirements for gang allegations, including defining " 'to benefit, promote, further, or assist' " a gang as " 'to provide a common benefit to members of a gang where the common benefit is more than reputational.' " (*Sek*, *supra*, 75 Cal.App.5th at p. 665.) The *Sek* court concluded that this change in the law applied retroactively to the defendant and required that he be resentenced. (*Id*. at pp. 666–670.)

*Sek* also briefly addressed Senate Bill No. 81, which had been enacted during the pendency of the appeal: "In 2021, the Legislature enacted Senate Bill No. 81, which amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (Stats. 2021, ch. 721, § 1.) Most notably, under the newly enacted subdivision (c)(2)(C) of section 1385,[] if '[t]he application of an enhancement could result in a sentence of over 20

15

years," the trial court "shall . . . dismiss[ ]' the enhancement.  (Stats. 2021, ch. 721, § 1.)  These requirements 'shall apply to sentencings occurring after the effective date of' Senate Bill No. 81.  (Stats. 2021, ch. 721, § 1, enacting § 1385, subd. (c)(7).)  Because any resentencing in this case will take place after Senate Bill No. 81 became effective on January 1, 2022, we agree with *Sek* that the court must apply the new law in any such proceeding."  (*Sek*, *supra*, 74 Cal.App.5th at p. 674.)

Thus, *Sek* held only that Sek was entitled to have Senate Bill No. 81 applied upon his resentencing.  We do not read *Sek* to hold, or even suggest, that where section 1385, subdivision (c)(2)(C) applies, dismissal of the enhancement is mandatory in every circumstance.

**The Restitution Fine Must Be Reduced to $10,000**

As noted, the trial court imposed a total restitution fine of $17,000, and imposed and suspended a parole revocation fine "in the same amount" as required by section 1202.45, subdivision (a).  Lipscomb contends, and the Attorney General concedes, that the trial court erred in imposing a fine in excess of the statutory maximum of $10,000.  Lipscomb asks that we remand for the imposition of "lawful restitution fines," whereas the Attorney General argues that we should simply reduce the fine and the parole revocation fine to the maximum of $10,000.

Section 1202.4, subdivision (b)(1) provides:  "The restitution fine shall be set at the discretion of the court and commensurate with the seriousness of the offense.  If the person is convicted of a felony, the fine shall not be less than three hundred dollars ($300) and not more than ten thousand dollars ($10,000)."  In Lipscomb's original appeal, we concluded that his restitution fine should be reduced to $10,000:

16

"We are unaware, however, of any authority suggesting that the $10,000 maximum fine established by section 1202.4, subdivision (b)(1) is *per count*, rather than in the aggregate.  We therefore order the abstract of judgment amended to reflect an aggregate restitution fine of $10,000." (*People v. Lipscomb*, *supra*, A128549, p. 11.)  Indeed:  " '[T]he maximum [restitution] fine that may be imposed in a criminal prosecution is $10,000 "regardless of the number of victims or counts involved."  [Citation.]' " (*People v. Blackburn* (1999) 72 Cal.App.4th 1520, 1534.)  And a court may only impose one restitution fine per case, so it is "error to impose a restitution fine . . . as to each count."  (*People v. Sencion* (2012) 211 Cal.App.4th 480, 483.)

As before, we will order the restitution fine and the parole revocation fine reduced to $10,000.

## DISPOSITION

The abstract of judgment shall be amended to reflect a restitution fine and a parole revocation fine of $10,000.  In all other respects, the judgment is affirmed.

 

_____

Richman, Acting P.J.

We concur:


_____

Miller, J.


_____

Van Aken, J. *


*People v. Lipscomb* (A164755)

     \*Judge of the San Francisco Superior Court, Judge Christine Van Aken, sitting as assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

| | |
|---|---|
| Trial Court: | San Francisco County Superior Court |
| Trial Judge: | Honorable Garrett L. Wong |
| Attorney for Plaintiff and Respondent, People of the State of California: | Rob Bonta, Attorney General of California; Lance E. Winters, Chief Assistant Attorney General; Jeffrey M. Laurence, Senior Assistant Attorney General; Seth K. Schalit, Supervising Deputy Attorney General; Arthur P. Beever, Deputy Attorney General |
| Attorney for Defendant and Appellant, Kevin Lipscomb: | Athena Shudde, Attorney at Law, under appointment by the Court of Appeal, for Defendant and Appellant. |