Filed 12/2/25; nonpub opn filed 11/4/25 vacated

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. KENNETH DOZIER, Defendant and Appellant. | B336625 (Los Angeles County Super. Ct. No. BA143017) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Martin L. Herscovitz, Judge. Affirmed.

Daniel Mansueto, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Ana R. Duarte and Megan Moine, Deputy Attorneys General, Kenneth C. Byrne, Supervising Deputy Attorney General, for Plaintiff and Respondent.

---

* Pursuant to California Rules of Court, rules 8.1100 and 8.1110, this opinion is certified for publication with the exception of sections B and C of the Discussion.

# INTRODUCTION

Penal Code section 1172.75[1] declares most one-year prior prison term enhancements imposed under section 667.5, former subdivision (b), legally invalid and authorizes the superior court to strike those enhancements and resentence the defendant. Section 1172.75, subdivision (d)(4), states that, when the court resentences the defendant, "[u]nless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."

Most courts have held that, under section 1172.75, the superior court can reimpose an upper term sentence, even if at resentencing a jury or judge has not found the facts underlying the aggravating circumstances true beyond a reasonable doubt, so long as the trial court that originally sentenced the defendant imposed an upper term. That's because section 1172.75, subdivision (b)(4), begins with, "Unless the court originally imposed the upper term . . . ." The cases holding the superior court may reimpose an upper term without a jury or judge finding aggravating circumstance true beyond a reasonable doubt have involved upper terms imposed after 2007. We agree with those courts.

---

[1] Undesignated statutory references are to the Penal Code.

2

But what about defendants like Kenneth Dozier, who were sentenced to upper terms prior to 2007, when the Legislature amended section 1170 to comply with a United States Supreme Court decision holding California's determinate sentencing scheme unconstitutional?  Can a resentencing court impose pre-2007 upper terms based on circumstances not found true by a factfinder beyond a reasonable doubt?  California courts have identified the issue, but have not reached it.

We need to reach it.  In 1997 a jury found Dozier guilty of attempted premeditated murder and possessing a firearm as a felon.  The trial court sentenced Dozier to an aggregate prison term of 69 years to life, a sentence that included a one-year prior prison term enhancement under section 667.5, former subdivision (b).

In 2023 the superior court resentenced Dozier under section 1172.75 and struck Dozier's prior prison term enhancement.  The court resentenced Dozier to an aggregate prison term of 38 years to life, which included, among other things, the upper term on a firearm enhancement based on aggravating circumstances not found true beyond a reasonable doubt by a jury.  Dozier argues the superior court erred in imposing the upper term because the trial court "originally imposed the upper term" in 1998 under a statute later declared unconstitutional.

In the published portion of our opinion we conclude the superior court did not violate Dozier's Sixth Amendment rights when it reimposed his pre-2007 upper term under section 1172.75, subdivision (d)(4), without heightened factfinding.  In the unpublished portion of our opinion we conclude the superior court did not err in denying Dozier's

3

requests to dismiss one of two additional enhancements—one for personally using a firearm and one for inflicting great bodily injury—and his prior serious or violent felony convictions under section 1385, subdivision (c).  Therefore, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A.     *A Jury Convicts Dozier of Attempted Murder, and the Trial Court Sentences Him*

On December 13, 1996, at 2:00 a.m., Roland Edwards walked out of a nightclub and encountered a man dressed in white.  The two men got into a fight, and the man hit Edwards in the face.  Edwards walked away and went to a nearby phone booth,[2] where he called home and spoke with his cousin and his mother.  While he was talking on the phone, Edwards heard the fence across the street rattle and saw two men in dark clothes standing and watching him.  One of the men had a teardrop-shaped mark under his eye.  Edwards hung up the phone.

As he walked away from the phone booth, the man dressed in white who had hit him earlier approached and said, "This is Eight Trey . . . .  What set are you from?"  Edwards said he was not from any "set" and was not "gang banging."  (An eyewitness to the shooting testified Edwards said he was from "Five Deuce.")

---

[2]     A phone booth is a structure that often has "four sides, a roof and a floor," where the "walls are solid and on the fourth side there was a door with a small width of board from floor to roof between the edges of the door and the side walls" (*People v. Miller* (1950) 95 Cal.App.2d 631, 634), with a payphone inside.  "One who occupies it, shuts the door behind him, and pays the toll that permits him to place a call . . . ."  (*Katz v. United States* (1967) 389 U.S. 347, 352.)

The man in white tried to take a diamond ring off Edwards's finger, but Edwards resisted. Edwards thought the men were going to leave, but the man with the teardrop-shaped mark on his face (whom Edwards later identified as Dozier) stepped up to Edwards and put a gun against his head "execution style." Dozier said, "Fuck Five Deuce" and fired a shot into Edwards's head. The men fled.

Edwards survived and identified Dozier as the shooter in a six-pack photographic lineup. Though the attack occurred at night, Edwards got a good look at Dozier because the area around the telephone booth was brightly lit. Asked at trial whether he had any doubt Dozier was the person who shot him, Edwards testified: "Nope, I don't have any doubt in my mind at all. That's the one face that I will never forget."

Aaron Lance Rodgers witnessed the shooting and also identified Dozier as the shooter. Rodgers remembered seeing Dozier at a nearby night club, where Rodgers had worked as a security guard. Rodgers recognized Dozier because of the teardrop-shaped mark on his face. The day after the shooting, Rodgers went to the police, reported the shooting, and said Dozier was the shooter. Rodgers selected Dozier's picture from among 44 photographs the police showed him.

A jury convicted Dozier of attempted willful, deliberate, and premeditated murder (§§ 187, subd. (a), 664, subd. (a)). The jury found true allegations he personally used a firearm (§ 12022.5, subd. (a)(1)) and personally inflicted great bodily injury (§ 12022.7, subd. (a)). The jury also convicted Dozier of possessing a firearm as a felon (former § 12021, subd. (a)(1)). The trial court found Dozier had a prior serious felony conviction, within the meaning of section 667, subdivision (a)(1); three prior

5

serious or violent felony convictions, within the meaning of the three strikes law (§§ 667, subds. (b)-(i), 1170.12, subds. (a)-(d)); and served a prior prison term, within the meaning of section 667.5, former subdivision (b).

On the attempted murder conviction the trial court imposed a term of life with the possibility of parole, and tripled the minimum parole eligibility under the three strikes law, plus the upper term of 10 years for the firearm enhancement under section 12022.5, subdivision (a)(1), and three years for the great bodily injury enhancement under section 12022.7, subdivision (a). On the conviction for possessing a firearm as a felon the court sentenced Dozier as a third-strike offender to a consecutive term of 25 years to life. The court imposed five years for the prior serious felony conviction enhancement under section 667, subdivision (a)(1), and one year for the prior prison term enhancement under section 667.5, former subdivision (b).

In Dozier's direct appeal, we modified the sentence on the attempted murder conviction and otherwise affirmed the judgment. (*People v. Dozier* (2000) 78 Cal.App.4th 1195.) On remand the trial court resentenced Dozier to 25 years to life on the attempted murder conviction and imposed an aggregate prison term of 69 years to life.

B.    *The Superior Court Resentences Dozier Under Section 1172.75*

In 2021 the Legislature declared legally invalid prior prison term enhancements imposed, like Dozier's, under section 667.5, former subdivision (b), before January 1, 2020, except those arising from convictions for sexually violent offenses. The Legislature enacted section 1172.75, which provided a procedure

6

for resentencing inmates serving terms that included the now-invalid enhancements.  (§ 1172.75, subd. (a).)

In 2023 the Department of Corrections and Rehabilitation notified the superior court that Dozier was serving a term that included a no-longer-valid enhancement.  In November 2023 Dozier filed a resentencing memorandum asking the court to exercise its discretion under section 1385 to dismiss his prior serious or violent felony convictions and to resentence him to time served or to a sentence that would make him immediately eligible for parole.  Dozier argued he had "been rehabilitated" and was "a different man now from the one who was convicted in 1997."  He stated he had only a few minor prison rule violations in the last 10 years, had reduced his prison classification score from 95 to 19 (the mandatory minimum score for a prisoner with his convictions), and was classified as "low risk."

The court reduced the sentence on Dozier's conviction for possessing a firearm as a felon from 25 years to life (which the court described as "quite draconian") to a concurrent sentence of two years (the middle term).  On the attempted murder conviction the court reimposed the sentence of 25 years to life under the three strikes law.  The court explained the sentence was "still appropriate" because Dozier shot "someone in the head at close range" while he was on parole and committed the prior serious or violent felonies in separate incidents where he "should have been able to reflect on the wrongfulness of his conduct."  The court concluded the upper term of 10 years was appropriate for the firearm enhancement because there were aggravating circumstances—Dozier "discharged [a firearm] into the head of another individual"—and no mitigating circumstances.  The court also reimposed the three-year great bodily injury enhancement.

The court struck the five-year serious felony enhancement and the prior prison term enhancement. The court resentenced Dozier to an aggregate prison term of 38 years to life. Dozier timely appealed.

## DISCUSSION

A. *Section 1172.75*

Section 1172.75, subdivision (a), states: "Any sentence enhancement that was imposed prior to January 1, 2020, pursuant to subdivision (b) of Section 667.5, except for any enhancement imposed for a prior conviction for a sexually violent offense . . . is legally invalid." (See *People v. Rhodius* (2025) 17 Cal.5th 1050, 1054; *People v. Grajeda* (2025) 111 Cal.App.5th 829, 835-836.) Section 1172.75, subdivision (b), requires the Department to identify individuals serving terms that include no-longer-valid enhancements. After the superior court verifies a judgment includes an invalid enhancement, the court must "recall the sentence and resentence the defendant." (§ 1172.75, subd. (c).) Section 1172.75, subdivision (d)(2), provides the court must "apply the sentencing rules of the Judicial Council and apply any other changes in law that reduce sentences or provide for judicial discretion so as to eliminate disparity of sentences and to promote uniformity of sentencing." ""By its plain terms, section 1172.75 requires a full resentencing, not merely that the trial court strike the newly 'invalid' enhancements."" (*Grajeda*, at p. 836.) "The court may consider postconviction factors, including, but not limited to, the disciplinary record and record of rehabilitation of the defendant while incarcerated, evidence that reflects whether age, time served, and diminished physical

8

condition, if any, have reduced the defendant's risk for future violence, and evidence that reflects that circumstances have changed since the original sentencing so that continued incarceration is no longer in the interest of justice."  (§ 1172.75, subd. (d)(3).)

We review a court's sentencing decisions in a section 1172.75 resentencing proceeding for abuse of discretion.  (*People v. Moseley* (2024) 105 Cal.App.5th 870, 874; *People v. Garcia* (2024) 101 Cal.App.5th 848, 855-856.)  But in "reviewing matters of statutory interpretation . . . we review the trial court's decision de novo."  (*People v. Gonzalez* (2024) 107 Cal.App.5th 312, 323 (*Gonzalez*); see *People v. Braden* (2023) 14 Cal.5th 791, 804 ["'The interpretation of a statute presents a question of law that this court reviews de novo.'"].)

>B.     *The Superior Court Did Not Err in Failing To Dismiss the Firearm Enhancement or the Great Bodily Injury Enhancement*

>>1.     *Section 1385, Subdivision (c)(2)(B), Did Not Require the Superior Court To Dismiss All but One Enhancement*

When the superior court resentenced Dozier, it reimposed two enhancements: one for personally using a firearm (§ 12022.5, subd. (a)) and one for personally inflicting great bodily injury (§ 12022.7, subd. (a)).  Dozier argues section 1385, subdivision (c)(2)(B), "mandates that where, as here, there are multiple enhancements in a case," the superior court must

dismiss all but one enhancement.[3]  Dozier acknowledges that in
*People v. Anderson* (2023) 88 Cal.App.5th 233 (*Anderson*) we
rejected his proposed interpretation of section 1385,
subdivision (c)(2)(B), but he asks us to reconsider our conclusion.
We decline.

Section 1385, subdivision (c)(1), provides "the court shall
dismiss an enhancement if it is in the furtherance of justice to do
so."  Section 1385, subdivision (c)(2), provides that, in exercising
its discretion under subdivision (c), the court must consider and
"afford great weight to evidence offered by the defendant to
prove" any of nine listed mitigating factors (see § 1385,
subd. (c)(2)(A)-(I)), "unless the court finds that dismissal of the
enhancement would endanger public safety" (§ 1385, subd. (c)(2)).
Those mitigating factors include that "[m]ultiple enhancements
are alleged in a single case."  (§ 1385, subd. (c)(2)(B).)  In that
instance, "all enhancements beyond a single enhancement shall
be dismissed."  (§ 1385, subd. (c)(2)(B).)

As we stated in *Anderson*, *supra*, 88 Cal.App.5th 233,
though "the term 'shall' in a statute is generally mandatory, not
permissive," we must read the term in the "'"'context of the
statute as a whole.'"'"  (*Id.* at p. 239.)  In section 1385,
subdivision (c)(2)(B), the statement all but one enhancement
"shall" be dismissed "appears as a subpart to the general

---

[3]      Although Dozier did not make this argument in the
superior court, we decline to find he forfeited the issue.  (See
*People v. Anderson* (2023) 88 Cal.App.5th 233, 239, fn. 7 [because
defendant's "interpretation of section 1385, if correct, would
result in an unauthorized sentence [citation], the issue is not
subject to forfeiture"]; *People v. Cabrera* (2018) 21 Cal.App.5th
470, 477 ["error involved in an unauthorized sentence is not
subject to forfeiture"].)

provision that a 'court shall dismiss an enhancement *if* it is in the furtherance of justice to do so.' [Citation.] In other words, the dismissal of the enhancement is conditioned on the court's finding dismissal is in the interest of justice. The nature of this condition is further explained by the Legislature's directive that the court, while 'exercising its discretion under this subdivision, . . . shall consider and afford great weight' to evidence of certain factors, and proof of one of the factors 'weighs greatly' in favor of dismissal 'unless' the court finds dismissal would endanger public safety. [Citation.] This language, taken together, explicitly and unambiguously establishes: the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson*, at p. 239.) Thus, under section 1385, subdivision (c), the court "shall" dismiss all but one enhancement "only *if,* in exercising its discretion and giving great weight to certain factors, the court finds dismissal is in the interests of justice or would not endanger public safety." (*Anderson*, at p. 240.) Every court that has considered the issue has agreed with our decision in *Anderson* that section 1385, subdivision (c), does not require the court to dismiss all but one enhancement. (See *People v. Mazur* (2023) 97 Cal.App.5th 438, 445; *People v. Cota* (2023) 97 Cal.App.5th 318, 337; *People v. Renteria* (2023) 96 Cal.App.5th 1276, 1289-1290; *People v. Mendoza* (2023) 88 Cal.App.5th 287, 297; *People v. Lipscomb* (2022) 87 Cal.App.5th 9, 18.)

Contrary to Dozier's contention, the Supreme Court's decision in *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*) does not "undermine" our decision in *Anderson*, *supra*, 88 Cal.App.5th

11

233. In *Walker* the Supreme Court rejected the argument that the "great weight" language in section 1385, subdivision (c)(2), created a rebuttable presumption requiring the court to dismiss an enhancement unless the court found dismissing the enhancement would endanger public safety. (*Walker*, at p. 1029.) Instead, the Supreme Court held that, "absent a finding that dismissal would endanger public safety, a court retains the discretion to impose or dismiss enhancements provided that it assigns significant value to the enumerated mitigating circumstances when they are present. [Citation.] In other words, if the court does not find that dismissal would endanger public safety, the presence of an enumerated mitigating circumstance will generally result in the dismissal of an enhancement unless the sentencing court finds substantial, credible evidence of countervailing factors that 'may nonetheless neutralize even the great weight of the mitigating circumstance, such that dismissal of the enhancement is not in furtherance of justice.'" (*Ibid.*) The Supreme Court in *Walker* did not decide whether "subdivision (c)(2)(B)'s 'shall be dismissed' language entitles that mitigating circumstance to a different construction than the others." (*Id.* at p. 1035, fn. 5.)

Dozier's argument *Walker* undermines our decision in *Anderson*, *supra*, 88 Cal.App.5th 233 is based on our citation to the legislative history of Senate Bill No. 81 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 721, § 1), which amended section 1385, subdivision (c). In *Anderson* we cited a letter from the bill's author, Senator Nancy Skinner, stating the "'retention of the word "shall" . . . should not be read as a retention of the previous presumption language—the judge's discretion is preserved.'" (*Anderson*, at p. 240, fn. omitted.) In *Walker* the Supreme Court

12

rejected the defendant's reliance on a different portion of the same letter to support the defendant's argument regarding how to interpret the phrase "great weight" in section 1385, subdivision (c)(2).  The defendant in *Walker* cited this statement from the letter:  "'I wish to clarify that in establishing the "great weight" standard in [Senate Bill No.] 81 for imposition or dismissal of enhancements . . . *it was my intent that this great weight standard be consistent with*'" *People v. Martin* (1986) 42 Cal.3d 437 (*Martin*).  (*Walker*, *supra*, 16 Cal.5th at p. 1037, fn. 7.)[4]  The Supreme Court in *Walker* stated "the singular reference to *Martin* in Senator Skinner's letter, which expressed her individual intent ('my intent') *after* the passage of Senate Bill No. 81, need not be considered because there is no indication the Legislature as a whole intended to incorporate *Martin*'s 'great weight' standard into section 1385, subdivision (c)(2) when it adopted Senate Bill No. 81."  (*Ibid.*)

The Supreme Court's decision not to consider Senator Skinner's reference to *Martin*, *supra*, 42 Cal.3d 437 in interpreting the "great weight" language in section 1385,

---

[4]    In *Martin* the Supreme Court held giving "great weight" to the determination by the Board of Prison Terms a sentence was disparate compared to sentences in other cases meant the trial court had to follow the Board's recommendation "in the absence of 'substantial evidence of countervailing considerations of sufficient weight to overcome the recommendation.'"  (*Martin*, *supra*, 42 Cal.3d at p. 447.)*

    * The Board of Prison Terms was "an 'executive parole agency' that [was] an 'arm of the Department of Corrections.'"  (*In re Roberts* (2005) 36 Cal.4th 575, 588.)  It "was abolished and replaced by the Board of Parole Hearings, effective July 1, 2005."  (*In re Vicks* (2013) 56 Cal.4th 274, 283, fn. 5.)

subdivision (c)(2), did not undermine our conclusion in *Anderson*, *supra*, 88 Cal.App.5th 233 that section 1385, subdivision (c)(2)(B), permits, but does not require, the court to dismiss all but one enhancement.  First, our decision in *Anderson* rested primarily, not on legislative history, but on the language of the statute, which "explicitly and unambiguously" gives the court discretion to dismiss enhancements, but does not require the court to dismiss them.  (*Anderson*, at p. 239; see *People v. Licas* (2007) 41 Cal.4th 362, 367 ["if there is 'no ambiguity or uncertainty in the language, the Legislature is presumed to have meant what it said,' and it is not necessary to 'resort to legislative history to determine the statute's true meaning'"]; *People v. Baltazar* (2020) 57 Cal.App.5th 334, 340 [same].)  Only after reaching that conclusion did we examine the legislative history of Senate Bill No. 81, which we found "further supports our interpretation that dismissal of the enhancements is not mandatory." (*Anderson*, at p. 240.)

Second, to the extent we relied on legislative history in *Anderson*, *supra*, 88 Cal.App.5th 233, we cited not only Senator Skinner's letter, but also the evolution of the bill as it moved through the Legislature.  We observed earlier drafts of the bill created a presumption in favor of dismissing an enhancement that could "'only be overcome by a showing of clear and convincing evidence that dismissal of the enhancement would endanger public safety.'"  (*Id.* at p. 240.)  But the Assembly replaced that language with the "more flexible discretionary language that now appears in section 1385, subdivision (c)(2)." (*Anderson*, at p. 240.)  Thus, even if we were to disregard Senator Skinner's letter entirely, we still would conclude section 1385, subdivision (c)(2), gives the court discretion to

14

impose more than one enhancement if the court finds that dismissing an enhancement would endanger public safety or that countervailing factors outweigh the multiple-enhancement mitigating circumstance such that dismissal is not in the interests of justice.  (See *Walker*, *supra*, 16 Cal.5th at p. 1029; see also *People v. Cota*, *supra*, 97 Cal.App.5th at p. 338 [acknowledging the "debate as to whether Senator Skinner's September 10, 2021 letter properly may be considered part of the statute's legislative history," but concluding that, "[e]ven without the letter, . . . the evolution of the statute confirms that the Legislature always intended for the court to maintain discretion to impose an enhancement upon a finding that dismissal would endanger public safety"]; *People v. Lipscomb*, *supra*, 87 Cal.App.5th at p. 19 ["every version of the statute—including, as we conclude, the current one—expressly empowered the court to impose the enhancement upon a finding that dismissing it would endanger public safety"].)

> 2.  *Dozier Forfeited His Argument the Superior Court Erred in Not Considering Whether To Dismiss an Enhancement*

Next Dozier argues that, even if section 1385, subdivision (c)(2)(B), did not require the superior court to dismiss all but one enhancement, the superior court erred in failing to exercise its discretion to consider doing so.  Dozier forfeited that argument, however, by not raising it in the superior court.  (See *People v. Carmony* (2004) 33 Cal.4th 367, 375-376 ["any failure on the part of a defendant to invite the court to dismiss under section 1385 . . . forfeits his or her right to raise the issue on appeal"]; *People v. Scott* (1994) 9 Cal.4th 331, 353 ["the waiver

15

doctrine should apply to claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices"]; *People v. Coleman* (2024) 98 Cal.App.5th 709, 724 [defendant's argument the trial court should have dismissed enhancements under section 1385, subdivision (c)(2)(B), was "forfeited for failure to request that the trial court strike the enhancements"].)

In his resentencing brief, and at the hearing, Dozier consistently asked the superior court to exercise its discretion under section 1385 to dismiss his prior serious or violent felony convictions under the three strikes law, but he never asked the court to dismiss the enhancements. He argued that his "three strike priors arose from a single case," that he was convicted of three crimes committed in a three-day period, and that he was only 18 years old at the time. Dozier presented 10 different resentencing options, all of which proposed dismissing two or three of his prior serious or violent felony convictions, which would have resulted in aggregate sentences ranging from a determinate sentence of 23 years four months to an indeterminate sentence of 35 years to life. None of Dozier's 10 proposals asked the court to dismiss the firearm enhancement or the great bodily injury enhancement (although one option included reducing the term for the firearm enhancement from 10 years to four years).

At the resentencing hearing counsel for Dozier argued that, because Dozier's prior convictions occurred "within days of each other," the case fell "more closely within the one-case one-strike situation" and that "it would be appropriate in this case to . . . treat that as one strike as opposed to three." After the superior court resentenced Dozier on his conviction for being a

16

felon in possession of a firearm and began to discuss resentencing him on the attempted murder conviction, counsel for Dozier stated she wanted "to point out that there was a defense theory and that was misidentification and [Dozier] did testify." The court stated: "We're not going to get into guilt or innocence; that's not relevant to the court's analysis. But was there anything else you wanted to say?" Counsel for Dozier responded, "No, your honor." By not asking the court to dismiss the firearm enhancement or the great bodily injury enhancement under section 1385, subdivision (c)(2)(B), Dozier forfeited the issue on appeal. (See *People v. Boyce* (2014) 59 Cal.4th 672, 731 [defendant forfeited arguments by not objecting after the court announced the sentence and asked whether "there was anything else to discuss"].)

Dozier argues he preserved the issue by citing in his resentencing brief "all of the section 1385, subdivision (c)(2) mitigating circumstances, including section 1385, subdivision (c)(2)(B), as support for his resentencing." True, Dozier cited section 1385, subdivision (c)(2)(A)-(I), and he mentioned "there were multiple enhancements." But he argued the "mitigating circumstances weigh greatly in favor of dismissing the prior strike enhancements," not the firearm or great bodily injury enhancement.

> 3. *The Record Does Not Show the Superior Court Failed To Consider Dismissing an Enhancement Under Section 1385, Subdivision (c)(2)(B)*

Even if Dozier had not forfeited the issue, his argument the superior court erred in failing to exercise its discretion under section 1385, subdivision (c)(2)(B), is meritless. Dozier argues

17

the superior court "never applied section 1385, subdivision (c)(2)(B)." However, the "'trial court is not required to state reasons for declining to exercise its discretion under section 1385' [citations], and 'is presumed to have considered all of the relevant factors in the absence of an affirmative record to the contrary.'" (*People v. Brugman* (2021) 62 Cal.App.5th 608, 637; see *People v. Parra Martinez* (2022) 78 Cal.App.5th 317, 322 ["Unless the record affirmatively demonstrates otherwise, the trial court is deemed to have considered all the relevant sentencing factors set forth in the rules."].) The record does not affirmatively demonstrate that the superior court failed to assign significant value to the mitigating factor of multiple enhancements under section 1385, subdivision (c)(2)(B), or that the court did not find countervailing factors outweighed that mitigating factor. (See *Walker, supra*, 16 Cal.5th at p. 1029.) "We may not presume error from a silent record." (*People v. Knowles* (2024) 105 Cal.App.5th 757, 765; accord, *People v. Czirban* (2021) 67 Cal.App.5th 1073, 1097; see *People v. Gutierrez* (2009) 174 Cal.App.4th 515, 527 ["in light of the presumption on a silent record that the trial court is aware of the applicable law, including statutory discretion at sentencing, we cannot presume error where the record does not establish on its face that the trial court misunderstood the scope of that discretion"].)

Dozier argues section 1385, subdivision (c), did not "authorize" his sentence because the superior court "did not make any findings of endangerment of public safety." There are two problems with this argument. First, section 1385, subdivision (c), does not require the court to make any findings when it declines to dismiss an enhancement. (See *People v. Bravo* (2025) 107 Cal.App.5th 1144, 1157 ["Section 1385, subdivision (a),

18

requires a trial court to state its 'reasons for the dismissal . . . orally on the record,' but there is no similar statutory requirement when a court denies a request to dismiss an enhancement."]; see also *In re Coley* (2012) 55 Cal.4th 524, 560 [section 1385 does not require "an on-the-record statement of reasons when a court declines to strike a prior" conviction].)

Second, the superior court did not have to dismiss one of the enhancements, even if it found doing so would not endanger public safety. The court had discretion to impose multiple enhancements, so long as it assigned significant value to the multiple-enhancement mitigating circumstance. (*Walker*, *supra*, 16 Cal.5th at p. 1029; see *id.* at p. 1033 ["notwithstanding the presence of a mitigating circumstance, trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry'"].)

C.     *Section 1385, Subdivision (c)(2)(B), Does Not Apply to the Three Strikes Law*

Dozier argues the superior court erred in not dismissing his prior serious or violent felony convictions under section 1385, subdivision (c). He contends dismissal was mandatory under section 1385, subdivision (c)(2)(B) (multiple enhancements) and section 1385, subdivision (c)(2)(C) (enhancement resulting in a sentence of over 20 years), and discretionary under section 1385, subdivision (c)(2)(H) (prior conviction is over five years old). "Whether the amendments to section 1385 apply to prior strike convictions is a question of statutory interpretation which we review de novo." (*People v. Burke* (2023) 89 Cal.App.5th 237, 242 (*Burke*).)

19

Every court that has considered the issue has held that, because "subdivision (c) of section 1385 applies only to an 'enhancement,'" and because the three strikes law is not an enhancement, section 1385, subdivision (c), does not apply to the three strikes law. (*Burke*, *supra*, 89 Cal.App.5th at p. 244; see, e.g., *People v. Dain* (2025) 115 Cal.App.5th 235, 247; *People v. Dowdy* (2024) 107 Cal.App.5th 1, 9-10; *People v. Olay* (2023) 98 Cal.App.5th 60, 67 (*Olay*); *People v. Tilley* (2023) 92 Cal.App.5th 772, 776, fn. 2.) We continue to agree with those courts.

"The term 'enhancement' has a well-established technical meaning in California law. [Citation.] 'A sentence enhancement is "an additional term of imprisonment added to the base term."' [Citations.] It is equally well established that the Three Strikes law is not an enhancement; it is an alternative sentencing scheme for the current offense. [Citations.] We presume the Legislature was aware of, and acquiesced in, both this established judicial definition of enhancement and the distinction between an enhancement and an alternative sentencing scheme such as the Three Strikes law." (*Burke*, *supra*, 89 Cal.App.5th at p. 243; accord, *Olay*, *supra*, 98 Cal.App.5th at pp. 65-66; see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 527 [the three strikes law "articulates an alternative sentencing scheme for the current offense rather than an enhancement"].)[5]

---

[5] Dozier correctly states that in *Walker*, *supra*, 16 Cal.5th 1024 the Supreme Court declined to address whether "section 1385, subdivision (c) . . . only applies to enhancements and not the Three Strikes law, which is an alternative sentencing scheme." (*Walker*, at p. 1029, fn. 2.)

Dozier makes two arguments why section 1385, subdivision (c), applies to the three strikes law, both of which he acknowledges the court rejected in *People v. McDowell* (2024) 99 Cal.App.5th 1147 (*McDowell*).[6] First, Dozier argues interpreting section 1385, subdivision (c), not to apply to alternative sentencing schemes like the three strikes law would render section 1385, subdivision (c)(1) and (c)(2)(G), surplusage. Subdivision (c)(1) prohibits the court from dismissing an enhancement "if dismissal of that enhancement is prohibited by any initiative statute." Section 1385, subdivision (c)(2)(G), requires the court to give great weight to evidence the defendant was a juvenile when he committed "the current offense or any prior offenses, including criminal convictions and juvenile adjudications, that trigger the enhancement or enhancements applied in the current case." According to Dozier, the only "enhancements" those provisions can possibly refer to are prior strike convictions under the three strikes law.

Even if the provisions of section 1385, subdivision (c)(1) and (c)(2)(G), Dozier identifies do not apply to any enhancements under current law, "our reading of the statute remains unchanged." (*McDowell*, *supra*, 99 Cal.App.5th at p. 1155.) "The canon against surplusage, like other canons of construction, is an interpretative aid; it is not absolute and ""will be applied only if it results in a *reasonable* reading of the legislation.""" (*Ibid.*) Dozier's "proposed interpretation—reading 'enhancement'" to include "any statutory mechanism that provides for a harsher

---

[6]    In *McDowell*, *supra*, 99 Cal.App.5th 1147 the court held section 1385, subdivision (c), does not apply to section 236.1, which "prescribes an alternate penalty" for certain human trafficking offenses. (*McDowell*, at p. 1154.)

sentence—is at odds with the term's established legal meaning" and is not reasonable. (*Ibid.*; see *Olay*, *supra*, 98 Cal.App.5th at p. 67 ["we are skeptical the Legislature would have expressed an intent to reject the well-established legal meaning of 'enhancement' in such a roundabout manner by obliquely referencing 'juvenile adjudications' as one of the relevant mitigating circumstances"].)

Second, Dozier argues the legislative history of Senate Bill No. 81 supports his contention section 1385, subdivision (c)(2), applies to the three strikes law.[7]  Because the language of section 1385, subdivision (c), is unambiguous, however, we do not need to consider the legislative history to interpret the statute. (See *People v. Blackburn* (2015) 61 Cal.4th 1113, 1123 ["'If no ambiguity appears in the statutory language, we presume that the Legislature meant what it said, and the plain meaning of the statute controls.'"]; *Burke*, *supra*, 89 Cal.App.5th at p. 243 [where "the statutory language is clear and unambiguous, we follow its plain meaning and do not consider the legislative history"].)

But even if we considered the legislative history of Senate Bill No. 81, it would not support Dozier's proposed interpretation. Dozier relies on two committee reports that characterized alternative penalties as enhancements. (See Sen. Com. on Public Safety, Rep. on Sen. Bill 81, Mar. 16, 2021, p. 3 [enhancements

---

[7]     Dozier's request for judicial notice of certain documents from the history of sections 1385 and 1172.75 is denied.  A "'request for judicial notice of published material [from a statute's legislative history] is unnecessary.  Citation to the material is sufficient.'" (*Madrigal v. Hyundai Motor America* (2025) 17 Cal.5th 592, 609, fn. 10.)  We "treat 'the request for judicial notice as a citation to those materials that are published.'" (*Ibid.*)

22

"can range from adding a specified number of years to a person's sentence . . . [to] converting a determinate sentence into a life sentence"]; Sen. Com. on Appropriations, Rep. on Sen. Bill 81, p. 1 [same].) But a subsequent June 2021 bill analysis of Senate Bill No. 81 by the Assembly Committee on Public Safety distinguished an "enhancement" from "an alternative penalty scheme" like the three strikes law and stated: "The presumption created by this bill applies to enhancements, but does not encompass alternative penalty schemes." (Assem. Com. on Public Safety, Analysis of Sen. Bill No. 81, as amended Apr. 27, 2021, at pp. 5-6.) As the court stated in *Olay*, *supra*, 98 Cal.App.5th 60, a "more unambiguous statement of the Legislature's intent to adopt the legal meaning of enhancement for section 1385, subdivision (c) can hardly be imagined." (*Olay*, at p. 67; see *id*. at p. 68 ["the legislative history after the June 2021 bill analysis . . . makes no reference whatsoever to the Three Strikes law or any other alternative sentencing scheme"].)

>   D.     *The Superior Court Did Not Err in Imposing the Upper Term for the Firearm Enhancement*

Dozier argues the superior court erred in reimposing the upper term on the firearm enhancement based on facts not found true beyond a reasonable doubt by a jury or a judge in a court trial, in violation of recent amendments to section 1170, subdivision (b), and section 1170.1, subdivision (d)(2). Section 1172.75, subdivision (d)(4), however, creates an exception

23

to the heightened factfinding requirements where the defendant was previously sentenced to the upper term, as Dozier was.[8]

1.     *The History of Sections 1170 and 1170.1*

The original version of section 1170, under which Dozier was sentenced, stated that, when a statute specified three terms, "the court shall order imposition of the middle term, unless there are circumstances in aggravation or mitigation of the crime." (Former § 1170, subd. (b); see Stats. 1977, ch. 165, § 15; Stats. 1998, ch. 926, § 1.5; *People v. Lynch* (2024) 16 Cal.5th 730, 746 (*Lynch*).)[9]  "Thus, the original statute reflected a presumption in favor of the middle term.  The accompanying rule of court specified such circumstances had to be proved by a

_____

[8]     Although Dozier did not object when the superior court reimposed the upper term, because the issue is whether his sentence was unauthorized, we decline to find he forfeited the argument.  (See *Anderson*, *supra*, 88 Cal.App.5th at p. 239, fn. 7.)

[9]     When Dozier was originally sentenced in 1997, former section 1170, subdivision (b), governed selection of the lower, middle, or upper term for offenses and for enhancements.  (See *People v. Brown* (2000) 83 Cal.App.4th 1037, 1045 [the "statutory basis for the selection of punishment for offenses or enhancements which contain three potential terms is section 1170, subdivision (b)"].)  In 2003 the Legislature moved the provision regarding selection of the term for enhancements to section 1170.1, subdivision (d).  (See § 1170.1, former subd. (d), as amended by Stats. 2002, ch. 126, § 1 (effective Jan. 1, 2003) ["If an enhancement is punishable by one of three terms, the court shall impose the middle term unless there are circumstances in aggravation or mitigation, and state the reasons for its sentence choice, other than the middle term, on the record at the time of sentencing."].)

24

preponderance of the evidence.  (Cal. Rules of Court, former rule 4.420(b).)[10]  Under that scheme the trial court, not the jury, determined the facts bearing on aggravation or mitigation employing the lower standard of proof."  (*Lynch*, at p. 746.)

In *Cunningham v. California* (2007) 549 U.S. 270 (*Cunningham*) the United States Supreme Court held California's determinate sentencing law violated the defendant's Sixth Amendment right to a jury trial by assigning "to the trial judge, not to the jury, authority to find the facts that expose a defendant to an elevated 'upper term' sentence."  (*Id.* at p. 274.) The United States Supreme Court described two ways California could modify its constitutionally defective determinate sentencing system to comply with the Sixth Amendment: (1) give the jury authority to "find any fact necessary to the imposition of an elevated sentence" or (2) "permit judges genuinely 'to exercise broad discretion . . . within a statutory range.'"  (*Id.* at p. 294.)

In response to *Cunningham*, *supra*, 549 U.S. 270 the Legislature in 2007 chose *Cunningham*'s second option, amending section 1170 to provide the choice between the lower, middle, and upper terms "shall rest within the sound discretion of the court."  (Former § 1170, subd. (b), as amended by Stats. 2007, ch. 3, § 2, pp. 6-7; see *Lynch*, at p. 747.)  The 2007 version of section 1170 allowed the court to "select the term which, in the court's discretion, best serves the interests of justice" and required the court to state the reasons for its

---

10      Citations to rules are to the California Rules of Court.

decision.  (Former § 1170, subd. (b); see *Lynch*, at p. 747.)[11]  Thus, the 2007 amendment "eliminate[d] the middle term presumption and instead [gave] the trial court authority to select among any of the three terms as a matter of discretion and without any judicial factfinding."  (*Lynch*, at p. 759.)

Effective January 1, 2022 the Legislature again amended section 1170, subdivision (b), and section 1170.1, subdivision (d). Under the 2022 version of the statutes, the middle term is the presumptive sentence, and the trial court may impose the upper term "only when there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and the facts underlying those circumstances have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial."  (§§ 1170, subd. (b)(2), 1170.1, subd. (d)(2); see Stats. 2021, ch. 731, §§ 1.3, 2.)  Notwithstanding these provisions, "the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury."  (§ 1170, subd. (b)(3).)  "The effect of the 2022 amendment was to embrace *Cunningham*'s first option."  (*Lynch*, *supra*, 16 Cal.5th at p. 748.)

---

[11]    The Legislature amended section 1170.1 to make the same change for enhancements.  (See § 1170.1, former subd. (d), as amended by Stats. 2009, ch. 171, § 5 (effective Jan. 1, 2010) ["If an enhancement is punishable by one of three terms, the court shall, in its discretion, impose the term that best serves the interest of justice, and state the reasons for its sentence choice on the record at the time of sentencing."].)

### 2. *Section 1172.75, Subdivision (d)(4), Creates an Exception to the Heightened Factfinding Requirement*

Section 1172.75, subdivision (d)(2), directs the superior court, in resentencing the defendant, to "apply the sentencing rules of the Judicial Council" and any "changes in law that reduce sentences or provide for judicial discretion." Dozier argues that the 2022 amendments to section 1170.1 "are such a change" and that the superior court violated section 1170.1, subdivision (d), by relying on facts not found by the jury (or a judge in a court trial)—that "the firearm was not just 'used' but 'discharged,' and that the victim was shot in the head"—in imposing the upper term for the firearm enhancement.

The People, however, argue section 1172.75, subdivision (d)(4), creates an exception to the heightened factfinding requirements where the defendant, like Dozier, was previously sentenced to the upper term. As discussed, section 1172.75, subdivision (d)(4), states: "Unless the court originally imposed the upper term, the court may not impose a sentence exceeding the middle term unless there are circumstances in aggravation that justify the imposition of a term of imprisonment exceeding the middle term, and those facts have been stipulated to by the defendant, or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." The People focus on the introductory phrase, "[u]nless the court originally imposed the upper term . . . ."

To reconcile the provisions of section 1170.1, subdivision (d)(2), and section 1172.75, subdivision (d)(2) and (d)(4), we rely on familiar principles of statutory interpretation. "'"As in any case involving statutory interpretation, our

27

fundamental task here is to determine the Legislature's intent so as to effectuate the law's purpose.""'" (*People v. Gonzalez* (2017) 2 Cal.5th 1138, 1141; see *Walker*, *supra*, 16 Cal.5th at p. 1032.) "We first "'look to the statute's words and give them their usual and ordinary meaning,'" as "'[t]he statute's plain meaning controls the court's interpretation unless its words are ambiguous."'" (*People v. Rhodius*, *supra*, 17 Cal.5th at p. 1057; see *People v. Johnson* (2022) 86 Cal.App.5th 258, 262-263.) "We construe statutory text in context and ""harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole."'"'" (*Rhodius*, at p. 1057; see *People v. Lewis* (2021) 11 Cal.5th 952, 961.)

The People rely on *People v. Brannon-Thompson* (2024) 104 Cal.App.5th 455 (*Brannon-Thompson*), where the court concluded the "unless" clause clearly and unambiguously "carves out an exception to the general rule that all ameliorative changes to the law must be applied at a section 1172.75 resentencing." (*Brannon-Thompson*, at p. 458.) Therefore, the *Brannon-Thompson* court held, "the new burden of proof amendments . . . apply only if the trial court is imposing the upper term for the first time at a section 1172.75 resentencing." (*Id.* at pp. 466-467.)[12] We agree with *Brannon-Thompson*, *supra*,

_____

[12] In *Brannon-Thompson*, *supra*, 104 Cal.App.5th 455 the superior court resentenced the defendant under section 1172.75, subdivision (d)(4), to the upper term on a conviction, not on an enhancement. (*Brannon-Thompson*, at p. 464.) But, as discussed, the heightened factfinding requirements for imposing the upper term for a conviction (section 1170, subdivision (b)) and for an enhancement (section 1170.1, subdivision (d)) are the same.

28

104 Cal.App.5th 455 that the plain language of section 1172.75, subdivision (b)(4), creates an exception to the heightened factfinding requirements where the upper term was originally imposed.  Reading section 1172.75, subdivision (b), together with section 1170.1, subdivision (d)(2), which the Legislature amended in the same session, we conclude the Legislature intended to adopt a uniform statutory scheme for imposing upper-term sentences, except where a court resentencing a defendant under section 1172.75 decides to reimpose an upper term.

Dozier, however, argues *Brannon-Thompson*'s interpretation of section 1172.75, subdivision (b)(4), violates the Sixth Amendment—an issue the *Brannon-Thompson* court did not consider.  Dozier relies on *Gonzalez, supra*, 107 Cal.App.5th 312, which disagreed with *Brannon-Thompson*.  The court in *Gonzalez* acknowledged "the plain language of section 1172.75, subdivision (d)(4), on its face, could be interpreted as not requiring proof of aggravating factors before reimposing an upper term sentence." (*Gonzalez*, at pp. 328-329.)  The *Gonzalez* court, however, stated "another reasonable interpretation of section 1172.75, subdivision (d)(4) would simply *restrict the scope of defendants eligible to receive the upper term* at resentencing to those who previously received the upper term, instead of creating a condition or exception independently justifying the imposition of the upper term." (*Id.* at p. 329.)  Under this interpretation, only a defendant originally sentenced to the upper term would be eligible to be resentenced to the upper term, but even then, the court could not impose the upper term "in the absence of aggravating factors stipulated to by the defendant or proven beyond a reasonable doubt to the trier of fact." (*Id.* at p. 329.) The *Gonzalez* court found this interpretation was necessary to

29

avoid a Sixth Amendment violation under *Lynch*, *supra*, 16 Cal.5th 730, which held that, under the 2022 version of section 1170, subdivision (b), "'a Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence.'" (*Gonzalez*, at p. 330.)

In *People v. Mathis* (2025) 111 Cal.App.5th 359, 366 (*Mathis*), review granted Aug. 13, 2025, S291628, the court rejected the defendant's "contention that the exception in section 1172.75, subdivision (d)(4), for cases in which the trial 'court originally imposed the upper term' must be construed, as a matter of constitutional avoidance, to nonetheless require aggravating factors to be found by the factfinder or admitted by the defendant." (*Mathis*, at p. 373.)  The court in *Mathis* explained that, when the defendant in that case "was sentenced, in 2017 [under the post-2007 version of section 1170], his sentence was imposed pursuant to the version of section 1170, subdivision (b), that granted the trial court broad discretion to select any of the three applicable prison terms.  As *Lynch* explained, under that sentencing scheme, there was no requirement for the judge to find a particular fact to justify imposition of the upper term.  [Citation.]  As a result, the court's selection of an upper term at [the defendant's] 2017 sentencing did not run afoul of the Sixth Amendment." (*Mathis*, at p. 373.) The court in *Mathis* concluded:  "Where, as here, the trial court elects to retain an upper term sentence that complied with the Sixth Amendment when originally imposed, the court need not

30

engage in any additional factfinding under section 1172.75, subdivision (d)(4)." (*Mathis*, at pp. 373-374.)[13]

Dozier argues *Mathis*, *supra*, 111 Cal.App.5th 359, review granted, is distinguishable because Dozier's upper-term sentence did not comply with the Sixth Amendment when originally imposed. Dozier has a point: Unlike the defendant in *Mathis* (and the defendants in *Brannon-Thompson*, *supra*, 104 Cal.App.5th 455 and *Gonzalez*, *supra*, 107 Cal.App.5th 312), Dozier was not sentenced under the 2007 version of section 1170, subdivision (b). Dozier was sentenced in 1997 (and resentenced in 2001) under the version of the statute the United States Supreme Court later found unconstitutional in *Cunningham*, *supra*, 549 U.S. 270, because it allowed the trial court to impose the upper term "based on judicial factfinding." (*Lynch*, *supra*, 16 Cal.5th at p. 747.) The court in *Mathis* stated it was not deciding whether section 1172.75, subdivision (d)(4), authorized a resentencing court to reimpose—without heightened factfinding—an upper term on a defendant who, like Dozier, was sentenced under the version of section 1170 in effect prior to 2007. (See *Mathis*, at p. 373, fn. 7 ["We are not presented with, and we therefore do not consider, the circumstance of a defendant who was sentenced under the version of section 1170, subdivision (b), determined to be constitutionally invalid in

---

[13] The Supreme Court granted review in *People v. Eaton*, 2025 WL 814818 (Mar. 14, 2025, C096853) [nonpub. opn.], review granted May 14, 2025, S289903, to decide whether section 1172.75, subdivision (d)(4), allows the superior court to reimpose the upper term where the defendant did not stipulate to, and a factfinder did not find true beyond a reasonable doubt, the facts underlying one or more aggravating circumstances.

31

*Cunningham*."].)  As stated, we have to decide that issue.  And we conclude resentencing pre-2007 defendants like Dozier to an upper term under section 1172.75, subdivision (d)(4), without heightened factfinding, does not violate the Sixth Amendment.

In enacting section 1172.75, subdivision (d)(4), the Legislature extended the benefit of the new heightened factfinding requirements in sections 1170 and 1170.1 on resentencing to defendants who were previously sentenced to the lower or middle term, but not to defendants like Dozier who previously received the upper term.  Section 1172.75, subdivision (d)(4), allows a court to reimpose an upper term, without heightened factfinding, both on defendants originally sentenced between 2007 and 2022 under a statute that gave the trial court discretion to select the lower, middle, or upper term without any judicial factfinding (a statutory scheme that, ""'everyone agrees," encounters no Sixth Amendment shoal'" (*Lynch*, *supra*, 16 Cal.5th at p. 747)) and on defendants originally sentenced before 2007, under the statute the United States Supreme Court found unconstitutional in *Cunningham*, *supra*, 549 U.S. 270, because it allowed the trial court to impose the upper term based on judicial factfinding.

We presume that, when the Legislature enacted section 1172.75, it was aware of the previous versions of sections 1170 and 1170.1 and the United States Supreme Court's decision in *Cunningham, supra*, 549 U.S. 270.  (See *People v. Frahs* (2020) 9 Cal.5th 618, 634 ["the Legislature 'is deemed to be aware of existing laws and judicial constructions in effect at the time legislation is enacted'"]; *People v. Terwilligar* (2025) 109 Cal.App.5th 585, 602 [presuming that, when it enacted section 1172.75, "the Legislature was aware of the [Three

32

Strikes] Reform Act's resentencing provision"].) Therefore, we presume the Legislature intended that, under section 1172.75, subdivision (d)(4), some defendants previously sentenced to an upper term based on judicial factfinding could be resentenced to an upper term without any new heightened factfinding. The Legislature was entitled to make that choice in enacting this ameliorative legislation. (See *People v. Standish* (2006) 38 Cal.4th 858, 880 ["'The judiciary, in reviewing statutes enacted by the Legislature, may not undertake to evaluate the wisdom of the policies embodied in such legislation; absent a constitutional prohibition, the choice among competing policy considerations in enacting laws is a legislative function.'"].)

Although in *Cunningham* the United States Supreme Court held the pre-2007 statutory scheme violated the Sixth Amendment, *Cunningham* does not apply retroactively to Dozier's sentence, which became final in 2001. (See *In re Gomez* (2009) 45 Cal.4th 650, 660 [*Cunningham* applies retroactively to cases not yet final when the United States Supreme Court decided *Blakely v. Washington* (2004) 542 U.S. 296 (*Blakely*)]; *People v. Amons* (2005) 125 Cal.App.4th 855, 868 ["the principles announced in *Blakely* apply only to cases not yet final when the opinion was issued"].)[14] Nor do the 2022 amendments to

_____

[14] "*Blakely* held that a criminal defendant's Sixth Amendment right to jury trial was violated by a Washington state trial court's imposition of "'an exceptional sentence'" beyond the "'standard range'" provided under Washington's Sentencing Reform Act, based upon facts that had not been found to be true by a jury beyond a reasonable doubt." (*In re Gomez, supra*, 45 Cal.4th at pp. 653-654.) In *Gomez* the California Supreme Court held *Cunningham* was retroactive to cases not yet final when *Blakely*

33

sections 1170 and 1170.1 apply retroactively to Dozier.  (See *Lynch*, *supra*, 16 Cal.5th at p. 742 [2022 amendment to section 1170, subdivision (b), applied retroactively to defendants "whose judgments were not final on direct appeal at the time the statute took effect"].)  By not extending the new heightened factfinding requirements to defendants like Dozier previously sentenced to an upper term, the Legislature left them in the same position they were in before resentencing—unable to take advantage of a non-retroactive ameliorative change in the law.  Section 1172.75, subdivision (d)(4), in effect made the new heightened factfinding requirements retroactive for some, but not all, defendants eligible for resentencing under section 1172.75.  That was not unconstitutional.[15]  (See *People v. Padilla* (2022) 13 Cal.5th 152, 162 [the Legislature may "disclaim the application of a new ameliorative law to proceedings that occur after a defendant's conviction or sentence has been vacated"]; *People v. Conley* (2016) 63 Cal.4th 646, 656 [the Legislature "may choose to modify, limit, or entirely forbid the retroactive application of ameliorative criminal-law amendments if it so chooses"]; *Mathis*, *supra*, 111 Cal.App.5th at p. 374 [the Legislature is "free to 'write statutes that provide for a different or more limited form of retroactivity, or for no retroactivity at

---

was decided because *Cunningham* "did not extend or modify the rule established in *Blakely*, but merely applied it to the California sentencing scheme."  (*Gomez*, at p. 657.)  In his supplemental brief Dozier "assumes for sake of argument, but does not concede, that *Cunningham* does not apply retroactively to judgments that became final before *Blakely*."

[15]     Dozier does not argue section 1172.75, subdivision (d)(4), violates equal protection.

34

all'"], review granted; *People v. Terwilligar*, *supra*, 109 Cal.App.5th at p. 601 [the Legislature has "power to limit prospective application of ameliorative changes"].)

Citing *Gonzalez*, *supra*, 107 Cal.App.5th at page 330, Dozier argues a "Sixth Amendment violation occurs when the trial court relies on unproven aggravating facts to impose an upper term sentence, even if some other aggravating facts relied on have been properly established." However, Dozier omits the words immediately preceding the quoted portion of the Supreme Court's opinion in *Lynch*: "under the current statute." (See *Lynch*, *supra*, 16 Cal.5th at p. 768.) As discussed, the current versions of sections 1170, subdivision (b)(2), and 1170.1, subdivision (d), do not apply to Dozier. (See *Lynch*, at p. 742.) Therefore, the Supreme Court's statement in *Lynch* does not help him.[16]

## DISPOSITION

The judgment is affirmed. The People's request for judicial notice is granted. Dozier's request for judicial notice is denied.

---

[16] In *Lynch*, *supra*, 16 Cal.5th at page 743 the Supreme Court held that, "in a case where the judgment is not yet final, a sentence imposed under former section 1170(b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute."

SEGAL, J.

We concur:

MARTINEZ, P. J.

STONE, J.